IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>BUNTING GRAPHICS, INC., BUNTING STAMP COMPANY, INC., 415 WEST WARRINGTON AVENUE, INC., BUNTING 5720, INC., JOSEPH P. BUNTING, AN INDIVIDUAL AND GENERAL PARTNER OF 415 WEST WARRINGTON AVENUE ASSOCIATES; ANDREW BUNTING, AN INDIVIDUAL AND PARTNER OF 415 WEST WARRINGTON AVENUE ASSOCIATES; JOSHUA BUNTING, AN INDIVIDUAL; AND SHANNON BUNTING, AN INDIVIDUAL;<br><br>Defendants, | 2:21-CV-01041-MJH |

OPINION AND ORDER

Plaintiff, Travelers Casualty and Surety Company of America, brings the within action against Defendants, based upon Defendants' alleged failure to fulfill obligations under two Indemnity Contracts after Travelers paid two indemnity bond claims on Defendants' behalf. (the "Suffolk claim" and the "Whiting-Turner (WT) claim" [1]).

Travelers moves for Summary Judgment against all Defendants on the Suffolk claims. (ECF No. 65). Defendants also move for Partial Summary Judgment on the Suffolk claim. (ECF No. 69). The parties provided briefs, concise statements of material facts, responses to the same, and supporting exhibits. (ECF Nos. 66-68, 70-82). The matter is now ripe for decision.

---

[1] At the time the parties filed their motions for summary judgment, the WT litigation had not been resolved. Thus, the WT bond claim is not currently before the Court on these motions.

For the following reasons, Travelers's Motion for Summary Judgment, as regards the Suffolk claim, will be granted, and Defendants' Motion for Partial Summary Judgment, as regards the Suffolk claim, will be denied.

I.   Background

Travelers issues surety bonds on construction projects. (ECF No. 76 at ¶ 1).  Bunting Graphics provides architectural products for construction companies.  (ECF No. 74 at ¶ 1). In 2006 and 2014, Bunting and the other Defendants executed two indemnity contracts (Indemnity Contracts) for the benefit of Travelers, in consideration for Travelers issuing bonds on various Bunting construction subcontracts.  *Id*. at ¶¶ 2-3.  The instant action involves two such subcontracts: the Suffolk Subcontract and the WT Subcontract.  The parties have briefed Travelers' claim for indemnity to recover for its payment under the bond to settle a claim under the Suffolk Subcontract.  Litigation on the WT Subcontract remains pending in the District Court of Maryland.

On or about June 25, 2018, Bunting entered into a $5,695,312.00 subcontract with Suffolk Construction Company, Inc. ("Suffolk") for Bunting to provide labor and materials for an exterior wall enclosure ("Suffolk Subcontract") at a project known as 25-11 49th Avenue Redevelopment Project, located at 25-11 49th Avenue, Long Island City, NY 11101 (the "New York Project"). *Id*. at ¶ 7. To meet a condition of the Suffolk Subcontract, Bunting requested Travelers to issue a performance bond in the penal sum amount of $5,695,312.00, naming Suffolk as Obligee and Bunting as Principal, for the New York Project. *Id*. at ¶ 8.

On or about June 26, 2019, Suffolk issued a notice to cure, alleging that Bunting had failed to prosecute the work as agreed, including payment of subcontractors. *Id*. at ¶ 13. On or about January 9, 2019, Suffolk issued a notice of default, citing Bunting's failure to fulfill its

obligations under the Suffolk Subcontract, including timely prosecution of the work. *Id*. at ¶ 10. By letter dated July 12, 2019, Suffolk declared Bunting in default and terminated the Suffolk Subcontract. *Id*. at ¶ 18. By letter dated September 13, 2019, Travelers advised Bunting that, based on the information to date, it intended to pursue a resolution of Suffolk's claim. *Id*. at ¶ 21. At that time, Travelers determined that a payment of $3.5 Million would likely be required to achieve a settlement with Suffolk. *Id*. at ¶ 22. In December, 2019, Suffolk issued a demand to Travelers, for payment on the bond in the amount of $5.6 Million. *Id*. at ¶ 24.

By letter dated July 20, 2020, Travelers denied Suffolk's bond claim, because Bunting insisted that the Subcontract was wrongfully terminated, the scope comparison did not support Suffolk's claimed damages, and because Bunting claimed it did not wrongfully retain the contract funds. *Id*. at ¶ 28. On July 23, 2020, Suffolk filed suit against Bunting and Travelers in the United States District Court for the Eastern District of New York, asserting that Bunting defaulted under the terms of the Suffolk subcontract. *Id*. at ¶ 29. In its suit against Bunting and Travelers, Suffolk sought damages from Travelers in an amount in excess of the penal sum of the Suffolk Performance Bond, plus statutory interest and attorneys' fees. *Id*. at ¶ 30. As part of Travelers continuing investigation of the Suffolk claim, Bunting provided information to support its view that Suffolk's claims had no merit. *Id*. at ¶ 35. After a February, 2021 mediation became bogged down in technical issues, Suffolk and Travelers agreed to an in-person meeting in May, 2021. *Id*. at ¶ 36. Travelers retained Vertex, a construction consultant, to investigate these technical issues. *Id*. at ¶ 40.

The information discussed during and received after the May, 2021 meeting caused Travelers to change certain assumptions. *Id*. at ¶ 37. As a result, Travelers determined that the facts that had been developed undermined Bunting's stated defenses to the Suffolk's claim.

3

During this in-person meeting, Suffolk referenced a PowerPoint, not previously provided to Travelers, which set forth the history of the Project, disclosed alleged Bunting defaults and affirmative misrepresentations from Bunting to Suffolk informing that Bunting had previously begun the curtain wall fabrication, when in reality it had not. *Id*. at ¶ 38. Travelers became aware that Bunting never issued a purchase order, nor entered into any subcontract with a subcontractor to furnish the curtain wall for the Project. *Id*. at ¶ 39. This information changed Travelers assessment of risk and liability to Suffolk for payment on the Bond. *Id*. at ¶ 37.

On July 23, 2021, Suffolk and Travelers executed a formal Settlement Agreement, and Travelers paid $4,200,000.00 to Suffolk. *Id*. at ¶ 42. Bunting did not agree to reimburse Travelers in any amount for Travelers's payment on Suffolk's claim; thus, Travelers has filed suit, demanding that the Bunting Defendants fulfill their obligations under the Indemnity Contracts. *Id*. at ¶¶ 44, 47.

The parties have filed cross-motions for summary judgment upon the Travelers' claim related to the Suffolk bond payments. Travelers moves for summary judgment, citing its contract discretionary authority to settle bond claims under the Indemnity Contracts. Bunting, in its motion for summary judgment, maintains that Travelers paid the Suffolk claim as a "volunteer," because the condition precedent under the Suffolk Subcontract had not been met, and/or because Travelers's conduct in settling the Suffolk claim was not done in good faith.

II.     Relevant Standard

Summary judgment may only be granted where the moving party shows that there is no genuine dispute about any material fact, and that judgment as a matter of law is warranted. Fed. R. Civ. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential

to his or her case, and on which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations, or determine the truth of the matter; rather, its function is to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (citing decisions); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998). The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment. *Liberty Lobby*, 477 U.S. at 248.

III.   Discussion

Travelers seeks reimbursement of its out-of-pocket losses, caused by Bunting's alleged failure to discharge their Indemnitor obligation to reimburse Travelers for its performance bond payments for the Suffolk project. To date, Travelers claims $5.170 Million in damages for:

1) settlement of the bond claim asserted by Suffolk
2) fees, costs and expenses incurred:
    a) in defending the Suffolk Claim;
    b) in defending the claim asserted by Whiting-Turner Construction Company claim ("WT Claim") currently pending in the Federal District Court of Maryland; and

   c) in prosecuting the instant litigation.

**<u>Suffolk Bond Claim</u>**

  1. Applicable Law

As an initial matter, Bunting argues that the "volunteer payment doctrine" under New York law should apply to preclude any recovery by Travelers. Bunting contends that New York law should prevail, because the bond at issue related to a New York project, which is where performance was due, and because Suffolk, the bond claimant, is a New York obligee, and because the subcontract between Suffolk and Bunting contained a choice-of-law provision calling for application of New York law, and because the underlying Suffolk lawsuit, that Travelers settled with Suffolk, was filed in a New York tribunal. Travelers maintains that the law does not support that, the jurisdiction (New York), where the indemnity agreements and bonds were issued, controls over the jurisdiction (Pennsylvania) where a bonded loss occurred.

  If two jurisdictions' laws are the same, then there is no conflict at all, and a choice of law analysis is unnecessary. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007). If there is no conflict, then the district court sitting in diversity may refer interchangeably to the laws of the states whose laws potentially apply. *Huber v. Taylor*, 469 F.3d 67, 74 (3d Cir. 2006) Under the "volunteer doctrine," pursuant to New York law, a "party that pays a claim it is not obligated to pay is a volunteer and may not recover those expenses." *Gen. Ins. Co. of Am. v. Merritt-Meridian Const. Corp.*, 1997 WL 187372, at *4 (S.D.N.Y. Apr. 16, 1997). As such, a surety seeking indemnity "may not recover [from the principal] unless it was obligated to pay under the terms of the payment bonds." *Id*. at *10. Pennsylvania law follows the same concept, "a party making a voluntary payment assumes the risk of being able to prove the actionable facts upon which his liability depends as well as the reasonableness of the amount which he pays."

*Willard v. Interpool, Ltd.*, 758 A.2d 684, 688 (Pa. Super. Ct. 2000).  As such, no real conflict exists in the application of the voluntary payment rule.  Further, the volunteer doctrine has been rejected in the surety context by both New York and Pennsylvania Courts. *Trav. Cas. & Sur. Co. v. Crow & Sutton Assocs.*, 172 Fed Appx 382, 384 (S.D.N.Y. 2006) (holding "Because Travelers operated under the Indemnity Agreements, the rule 'that a surety who pays a claim that it is not obligated to pay is a volunteer and may not recover from the principal' does not apply in this case."); *U.S. Fid. & Guar. Co. v. Feibus*, 15 F.Supp.2d 579, 583 (M.D. Pa. 1998), aff'd, 185 F.3d 864 (3d Cir. 1999) (rejecting defendants' "volunteer" argument). Instead, under both New York and Pennsylvania law, a surety enjoys broad discretion to "adjust, settle or compromise a bond claim and then recover from the [indemnitors]." *Id*.

    2.   Indemnity Contract Liability

Travelers argues that, under the terms of its 2006 and 2014 Indemnity Contracts, Bunting defaulted on its obligations, and that, because of said default, Travelers sustained losses under the Suffolk Bond Agreement.  Specifically, Travelers contends that the "prima facie clause" of the Indemnity Contracts entitles it to reimbursement.  Additionally, by virtue of a sustained loss and its contractual right of reimbursement, Travelers maintains that the burden of proof shifts to Bunting to demonstrate that Travelers acted in bad faith when it paid Suffolk, on Bunting's behalf, pursuant to the surety bond.

Bunting contends that Travelers cannot recover on the Suffolk claim, because the condition precedent under the bond was not satisfied, and because Travelers paid the claim as a "volunteer."  Specifically, Bunting argues that, at the time when Suffolk terminated its Subcontract with Bunting and made its performance bond claim to Travelers, the subject building had not yet been erected.  Therefore, Bunting argues that, because Suffolk had not

7

"performed its obligation in the Subcontract," the condition precedent to Bunting's duty to perform under the Subcontract had not been satisfied. Accordingly, Bunting maintains that Travelers was not authorized to pay under the bond. Bunting further asserts that Travelers did not comport with a its duty of good faith and fair dealing when it settled the Suffolk claim. Finally, Bunting maintains that there are material questions of fact as to the fairness, reasonableness, and necessity of Travelers's expenditures.

In response, Travelers maintains that Bunting's argument, about a Suffolk performance being a "condition precedent" to Bunting's obligations to perform, was immaterial to Suffolk's termination of the Bunting Subcontract. Travelers contends that Suffolk terminated Bunting for other reasons, unrelated to whether Suffolk had begun constructing the subject building.

### a. Prima Facie Evidence and Bad Faith Defense

The Indemnity Contracts contain a "prima facie evidence" clause as follows:

**PROMISES AND AGREEMENTS**: In consideration of the furnishing of any such Bond, . . . by [Traveler], the assumption of obligations by [Travelers] of any Bond, and for other valuable consideration, [Bunting] hereby jointly and severally promise[s] and agree[s] as follows:

\*\*\*

2. To indemnify and exonerate [Travelers] from and against any and all loss, cost and expense of whatever kind which it may incur or sustain as a result of or in connection with the furnishing of Bond(s)… and/or the enforcement of this Agreement, including… interest, court costs and counsel fees, and any expense incurred or sustained by reason of making any investigation, hereinafter referred to as "Loss." To this end, indemnitors promise:

   (a) To promptly reimburse [Travelers] for all sums paid on account of such Loss and it is agreed that (1) originals or photocopies of claim drafts, or of payment records…. shall be **prima facie evidence** of the fact and amount of such Loss; and (2) [Travelers] shall be entitled to reimbursement for any and all disbursements made by it, under the belief that it was liable, or that such disbursements was necessary or expedient.

> (b) To deposit with [Travelers], on demand, the amount of any reserve against such Loss which [Travelers] is required, or deems it prudent to establish whether on account of an actual liability or one which is, or may be, asserted against it, and whether or not payment for such Loss has been made.

(ECF No. 67-9) (emphasis added).

A "prima facie evidence" clause in an indemnity agreement shifts to the indemnitor the burden of proving fraud or bad faith and that the costs incurred were not recoverable. *Fallon Elec. Co. v. Cincinnati Ins. Co.*, 121 F.3d 125, 129 (3d Cir. 1997). An indemnitor must satisfy the following elements in order to demonstrate that a surety acted in bad faith: 1) the surety lacked a reasonable basis for paying the claims; and 2) the surety knew or recklessly disregarded its lack of a reasonable basis for doing so. *Developers Sur. & Indem. Co. v. BLB Constr., Inc.*, 2008 U.S. Dist. LEXIS 67189, at *8 (W.D. Pa. Aug. 11, 2008) (citing *U.S. Fidelity & Guar. Co. v. Feibus*, 15 F. Supp.2d 579, 584 (M.D. Pa. 1998), *aff'd*, 185 F.3d 864 (3d Cir. 1999). Bad faith can also be demonstrated by "a showing of recklessness or improper motive such as self-interest or ill will." *Feibus*, 15 F. Supp. 2d at 586 (citing *Polselli v. Nationwide Mut. Auto. Ins. Co.*, 23 F.3d 747, 751 (3d Cir. 1994)). Here, as to the prima facie clause, the parties do not dispute that Travelers paid out $4,552,582.44 on the Suffolk claim. Thus, the Indemnity Contract's prima facie clause would be triggered, and Bunting would be contractually bound to reimburse Travelers. In its defense against such obligation of indemnity, Bunting asserts that Travelers paid the Suffolk claim in bad faith.

Bunting maintains that the Suffolk claim lacked merit, because Suffolk had not itself erected the structure for which the Bunting fabrication was needed; and thus, since the structure itself was not built, the Subcontract with Bunting did not require performance. Further, Bunting contends that Travelers and its retained expert, Vertex, had consistently denied the merits of the

9

Suffolk claim. Bunting asserts that Travelers only reversed course after a bilateral meeting with Suffolk and without Bunting's input. Bunting argues that such conduct constitutes bad faith, and precludes Travelers from recovering on its indemnity claim. In the least, Bunting contends that the Indemnity Agreement's phrase "under the belief that it was liable," calls for a factfinder inquiry into Traveler's state of mind, as regards the bad faith element.

Travelers argues that it did not commit bad faith, and that the undisputed facts establish that it had a reasonable basis for its decision to pay the Suffolk claim. Travelers further contends that Bunting has not cited any record evidence to establish that settling the Suffolk claim exceeded the discretion provided within in the Indemnity Contracts. Finally, Travelers maintains that, because Bunting has not identified any other settlement value to resolve Suffolk's claim, there is no basis to establish bad faith.

Bunting's main bad faith contention, that Travelers should not have paid the claim, is unavailing. Once the conditions of the prima facie clause have been met, Bunting bears the burden to demonstrate bad faith. As outlined above, indemnity contracts, like the one here, grants Travelers broad discretion in settling claims. Such express discretion is consistent with construction and surety industry practices in order to prevent indemnity claims from becoming mired in litigation. The "under belief it was liable" phrasing permits sureties to evaluate and resolve claims without the necessity of litigation to determine the merits of a claim or to establish an indemnitor's liability to the surety. Thus, Travelers' actions and decision to pay the claim were within its contractual discretion and Bunting has not met its burden to produce evidence sufficient to establish bad faith.

In addition, Bunting's assertion, that Travelers acted in bad faith when it reversed its position and settled the Suffolk claim, is also unavailing. Following Bunting's termination from

the Suffolk project, Travelers retained Vertex and outside counsel. Shortly after said retention, Travelers placed a settlement value on the Suffolk dispute, and advised Bunting's counsel about Bunting's potential exposure. The record belies any "complete about face," as Bunting claims. Instead, the record demonstrates that Travelers spent most of its investigation, evaluating the technical aspects of the Suffolk claim. This included engaging in meetings and mediations with Suffolk and retaining a construction consultant, Vertex. The record does not support a lack of reasonableness or slipshod evaluation by Travelers. Such conduct does not comport with Bunting's bad faith narrative.

The prima facie clause shifted the burden to Bunting to show either bad faith or unreasonableness of Traveler's decision to settle and pay the Suffolk claim. Bunting has not established that any genuine issue of material fact regarding bad faith or unreasonableness in Travelers's handling and payment of the Suffolk claim. Therefore, Bunting's defense of bad faith fails.

      **b.    Condition Precedent arguments**

Bunting's argument, that Suffolk had a precedent duty to construct the building before Bunting's performance obligation was triggered, also lacks merit.

First, the Subcontract between Suffolk and Bunting specifies default and its consequences as follows:

> **8.6.2** If [Bunting] at any time defaults in any of its obligations under this Subcontract, neglects to carry out the Work in accordance with this Subcontract or the Contract Documents, fails to supply a sufficient number of properly skilled workmen or materials of the proper quality or quantity, fails in any respect to prosecute the Work promptly or diligently, or fails to maintain the [Suffolk's] job schedules or fails in [Suffolk's] opinion in the performance, or observance of any terms, conditions, obligations or covenants of this Subcontract, [Suffolk] may, after twenty-four (24) hours' written notice to [Bunting] (unless [Bunting] cures such default within said period) and without prejudice to any other remedy that [Suffolk] may have at law, contract, equity or otherwise (i) provide any such labor

11

> and materials and deduct the cost thereof from any money due or thereafter becoming due to [Bunting] and/or (ii) terminate the employment of [Bunting] and enter upon the Project and take possession of all materials and equipment whatsoever thereon, including, without limitation, all materials stored on or off site, and employ any other person or persons to finish the Work and provide materials therefore.

(ECF No. 67-13 at p. 10). On January 9, 2019, Suffolk provided a written notice of default upon Bunting:

> Suffolk Construction Company, Inc. ("Suffolk") hereby notifies Bunting Architectural Metals ("Bunting") that Bunting is in default of the subcontract between Suffolk and Bunting for the above-referenced project (the "Project") dated June 25th, 2018 (the "Subcontract"). Bunting's defaults include, without limitation, its failure to (i) prosecute its work promptly and diligently; and (ii) fulfill its obligations in accordance with the terms and conditions of the Subcontract. Such failures include, without limitation, Bunting's failure to provide scheduled submittals, including shop drawings and thermal and structural calculations for the curtain wall systems. These failures have moved this work onto the schedule critical path and are delaying the Project.

(ECF No. 67-15).

Second, the Suffolk Performance Bond provides in relevant part as follows:

> 4. **PRINCIPAL DEFAULT**. Whenever [Bunting] shall be, and is declared by [Suffolk] to be in default under the Subcontract, with [Suffolk] having performed its obligation in the Subcontract, [Travelers] may promptly remedy the default.

(ECF No. 71-6).

Third, Paragraph 14 of the Indemnity Contracts between Bunting and Travelers states:

> [Bunting] agree[s] that any of the following shall constitute an act of default under the Indemnity Contracts:
>
> (a) Failure to perform the work of Bonded Contracts in timely and proper fashion, or to make payment when due of bills in connection therewith;
>
> (b) A declaration of default by any Bonded Contract owner;
>
> ***
>
> (e) The sustaining of Loss by [Travelers] under Bond(s); and/or,

>   (f) The establishment by [Travelers] of reserves against Loss in connection with Bond(s).

(ECF No. 67-6).

Here, when reading these documents in a triad, there are no genuine issues of material fact as to Bunting's default under the Suffolk subcontract and under the Indemnity Contract. Suffolk declared Bunting in default for the reasons it enumerated in its January 19, 2019 letter. (ECF No. 67-15). These enumerated reasons of default fit squarely within the Bunting/Suffolk Subcontract, Section 8.6.2's terms of default and reasons for termination. In addition, Bunting's failure to provide timely work and Suffolk's declaration of default triggered the default provisions of the Bunting/Travelers Indemnity Contract, Paragraph 14. With the conditions of default in the Subcontract and Indemnity Contract met, Travelers's obligations pursuant to the Performance Bond ripened.

Bunting's contention, that Suffolk did not "[perform] its obligation in the Subcontract", is unavailing. Bunting premises this contention on Suffolk's failure to erect the subject building; however, the Subcontract does not impose any such condition precedent duty upon Suffolk to require erection of the building before Bunting's performance was due. Further, the defaults outlined within Suffolk's January 19, 2019 letter were not dependent upon the erection of any existing structure by Suffolk. Therefore, the record supports that there is no genuine of issue of material fact regarding Bunting's indemnity liability to Travelers under the Travelers/Bunting Indemnity Agreement.

Finally, Travelers fulfilled its contractual duties when it paid Suffolk the settlement funds. Therefore, having applied the terms of the three relevant documents, this Court concludes that Travelers properly issued payment to Suffolk and Travelers is entitled to reimbursement from Bunting. Bunting's defense of a condition precedent fails.

IV.     Conclusion and Order

Accordingly, Traveler's Motion for Summary Judgment on its Indemnity Contracts for the Suffolk claim will be granted, and Bunting's Motion for Partial Summary Judgment on the Suffolk claim will be denied.  Summary Judgement is granted in favor of Travelers on the Suffolk claim. Bunting is liable to reimburse Travelers $4,552,582.44 for the claim payments made to Suffolk.  Bunting is also liable to pay Travelers for supplemental fees and expenses provided for in the Indemnity Contract; however, calculation of such supplemental fees and expenses requires further record development.  As such while liability for such fees and expenses is hereby established, judgment as to such amount must be deferred.

DATED this 12th day of June, 2025.

BY THE COURT:

_____
MARILYN J. HORAN
United States District Judge